# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01234-LTB-MJW

LEANNE R. DALTON, an individual

        Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC.,
a New York Corporation,
BANK OF AMERICA, NATIONAL ASSOCIATION,
a National Banking Association, f/k/a
COUNTRYWIDE BANK, FSB,
and BAC HOME LOANS SERVICING, LP,
a Texas Limited Partnership

        Defendants.

---

## FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

On June 29, 2011, a Pretrial Conference was held with the Court and counsel in the above-captioned case. Plaintiff was represented by Otto K. Hilbert, II of Robinson, Waters & O'Dorisio, P.C., 1099 18th Street, Suite 2600, Denver, Colorado 80202, (303) 297-2600. Defendants were represented by J. Kevin Bridston and Sean M. Hanlon of Holland & Hart LLP, 555 Seventeenth Street, Suite 3200, Denver, Colorado 80201-8749, (303) 295-8000.

## 2.  STATEMENT OF JURISDICTION

Diversity jurisdiction exists in this case based upon the diversity of the domicile and state or residence of the Plaintiff and Defendants pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the jurisdictional threshold for this Court.

Additionally, this Court has jurisdiction over the subject matter because it involves Federal questions under the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*), Regulation Z (12 C.F.R. § 226.1, *et seq.*), the Home Owners Equity Protection Act (12 C.F.R. § 226.32), the Real Estate Settlement Procedures Act (12 U.S.C. § 2601, *et seq.*), and Regulation X (24 C.F.R. § 3500, *et seq.*).

## 3.  CLAIMS AND DEFENSES

*a.    Plaintiff:*    Plaintiff Leanne R. Dalton obtained mortgage loans from Defendants Countrywide Home Loans, Inc. and Countrywide Bank, FSB (which later merged into Bank of America, National Association) to finance the acquisition and construction of her principal residence in Evergreen, Colorado.  Two loans were initially entered into in June 2007, but they were quickly refinanced by two other loans in September 2007.  The September 2007 loan documents provide for a total of $1,646,500.00 to be made available to Plaintiff.  Plaintiff was permitted to draw approximately $1,420,000.00 of these amounts, but beginning in late Spring 2008 Defendants denied further draw requests, on an arbitrary basis.  To the best of Plaintiff's understanding, the basis for the denial related to foreclosures on properties purchased by a developer at a substantial distance from Plaintiff's property, and did not relate to Plaintiff or her ability to repay the loans.

2

Defendants proceeded to intentionally lead on Plaintiff by stating that if she contributed her own funds to certain construction projects, Defendants would be willing to disburse the remaining amounts available under the loans. Although Plaintiff on multiple occasions contributed significant amounts of her own funds toward the construction on the property at Defendants' instigation, Defendants did not disburse the additional requested amounts to her. A representative of Defendants aggressively yelled at Plaintiff in a subsequent telephone conversation that no further amounts would be disbursed to her under the loans. Plaintiff was unable to make further payments on the property and at Defendants' urging she eventually entered into a short sale of the property. The proceeds of the short sale went to Defendants, and Plaintiff lost all amounts she had contributed to the project, meaning that only Defendants realized the benefit of the additional construction work paid for by Plaintiff.

Defendant BAC Home Loans Servicing, LP thereafter made false reports to consumer credit reporting agencies regarding Plaintiff's missed payments. BAC Home Loans Servicing, LP did not immediately correct the reporting although it represented to Plaintiff that it would do so, and Plaintiff was forced to follow up with Defendant repeatedly on this matter. During the time of the false reporting Plaintiff's credit score was hurt and she was prevented from purchasing another residence to replace the one that was the subject of the loans in this case. Her prior residence, which she was forced to hold onto, lost significant value during this time.

Based on the loan transactions and subsequent occurrences, Plaintiff first alleges that Defendants engaged in misrepresentations and breached its duty of good

3

faith under the Colorado Consumer Protection Act, in particular related to the amounts that would be made available to Plaintiff under the loans and those amounts that would be disbursed to her upon her payment for certain construction work.  Plaintiff further alleges breach of contract based on Defendants' failures to disburse the amounts agreed upon under the loans, both for violating the express contractual terms and by violating the covenant of good faith and fair dealing.  Plaintiff has made claims based on promissory estoppel and unjust enrichment in the alternative of the contractual claims.

Defendants owed a fiduciary duty to Plaintiff, based on their relationship and in particular based upon Defendants' counsel and advice in the performance of certain construction work at Plaintiff's cost, which was breached.  Plaintiff asserts that the behavior of Defendants was so offensive and outrageous in these matters as to rise to the level of outrageous conduct.

Additionally, there are a number of Federal and state statutes that impose requirements related to mortgage loan transactions.  Many of these, such as the Truth in Lending Act, Home Owners Equity Protection Act, Real Estate Settlement Procedures Act, and related Colorado statutes, require advance disclosures prior to entering into this type of loan transaction.  Much of this information was not disclosed at all to Plaintiff or was incorrect.  For instance, the finance charges disclosed in the Truth in Lending Act disclosure statements fail to take into account all fees, costs, and other amounts that should be included.  Other requirements of these laws were similarly violated.

Finally, Defendant BAC Home Loans Servicing, LP defamed Plaintiff with malice and willful intent to injure Plaintiff by making the false, negative credit reports, and similarly misrepresented to Plaintiff that the false reports were being corrected.

From the disclosures that predated the beginning of these loan transactions until even after the date that the property was sold, the Defendants misled Plaintiff and failed to comply with obligations owed to Plaintiff at law and by contract.

*b.*    *Defendants:*  Plaintiff Leanne Dalton ("Dalton") obtained financing from Defendants in excess of $1.43 million for the acquisition of, and construction of improvements on, certain real property located at 34305 Ranchero Road, Evergreen, Colorado 80439 (the "Property").  The financing to acquire the Property was obtained through two loans in June 2007.  In July 2007, Dalton entered into a construction contract for substantial improvements to the Property.  As a result, and in September 2007, Dalton refinanced the loans obtained to acquire the Property in order to fund substantial construction improvements to the Property, and to retire the two June loans.

During the construction, Defendants discovered a budget shortfall.  The amount disbursed under the construction loan exceeded the percentage of the construction completed.  Even full disbursement of the loan amounts would not have bridged the gap.  Consequently, and after disbursing over 97% of the construction loan, Defendants ceased further disbursements per the terms of the construction loan agreement. Defendants had no control over, or management of, Dalton's construction budget.  The construction budget fell below the actual costs of construction and was mismanaged by Dalton.

To get the project caught up, Dalton began to personally fund the construction. But despite having sufficient resources to continue this endeavor, Dalton decided not to complete the construction, and ultimately failed to repay the money loaned by Defendants.

Not only has Dalton failed to repay the loans, but Defendants accepted a short sale that resulted in a loss to Defendants in excess of $600,000.00. As a condition to accepting the short sale, Defendants agreed to waive the deficiency amount owed by Dalton.[1] Nevertheless, Dalton filed a 22-page, 119-paragraph Complaint, containing 15 separate claims against the Defendants on May 27, 2010.

On May 23, 2011, Defendants filed a dispositive motion seeking the entry of judgment in their favor and against Dalton on each of her 15 claims for relief. This dispositive motion has been fully briefed and is now pending before the Court. Through the dispositive motion, Defendants request that judgment enter against Dalton on her: (1) ninth through twelfth, and fourteenth, claims for relief as barred by the applicable statutes of limitation, (2) thirteenth claim for relief because there is no private cause of action for her Real Estate Settlement Procedures Act claim, (3) second claim for relief because she does not have standing to bring a claim under the Colorado Consumer Protection Act, (4) first and fourth through eighth claims for relief because they are barred by operation of Colorado's credit agreement statute of frauds, (5) seventh claim for relief because Defendants did not owe Dalton a fiduciary duty, (6) eighth claim for relief because Dalton's outrageous conduct claim fails to state a plausible claim for

---

[1] In addition to waiving the deficiency amount owed by Dalton, Defendants have not brought any counterclaims against her in this action. Defendants will seek recovery of their attorney fees and costs, in an amount to be determined, pursuant to the terms of the loan documents, and to the extent applicable, under C.R.S. § 13-17-102.

relief, (7) fifteenth claim for relief because Dalton's defamation claim is preempted by Fair Credit Reporting Act and because it is based on a true statement, (8) third claim for relief because Defendants met all of their contractual obligations to Dalton, and because Dalton's breaches of contract bar her third claim for relief, and (9) sixth claim for relief because Defendants did not breach the implied covenant of good faith and fair dealing, and the implied covenant does not require Defendants to vary or contradict terms for which they bargained, accept a material change to the terms of the loan documents, or inject substantive terms into the credit agreements.

Defendants deny Dalton's claims and assert the following affirmative defenses: Dalton's claims are barred by the applicable statutes of limitation, Dalton's complaint fails to state a claim upon which relief can be granted, Dalton's claims are barred or limited by the credit agreement statute of frauds, Dalton's claims are barred to the extent they are found to be frivolous, groundless, and/or vexatious, Dalton's claims are barred or limited by the parol evidence rule, Dalton's claims are barred or limited by the doctrine of unclean hands, Dalton's claims are barred or limited by her substantial and material breaches of her agreements with Defendants (including anticipatory repudiation), and Dalton's claims are barred or limited by the doctrines of waiver, estoppels, and laches.

### 4. STIPULATIONS

The parties have stipulated to the following:

a.  On June 29, 2007, Dalton acquired certain real property located at 34305 Ranchero Road, Evergreen, Colorado 80439 (the "Property").

b.	In June 2007, and in order to finance the acquisition of the Property, Dalton applied for, and subsequently obtained, two loans.

c.	The first loan, identified as Mortgage Loan Number 176028895, had a principal balance of $649,999.00, and closed on June 29, 2007.

d.	The second loan, identified as Mortgage Loan Number 176028903, was for a line of credit in the amount of $173,651.00, and also closed on June 29, 2007.

e.	The June Loans were memorialized by corresponding promissory notes and deeds of trust.

f.	On July 19, 2007, Dalton entered into a construction contract concerning the construction of improvements to the Property.

g.	On September 10, 2007, the June Loans were refinanced as a construction loan and a line of credit.

h.	The construction loan, identified as Mortgage Loan Number 17765156, had a principal amount of $1,470,000.00 (the "September Construction Loan").  The September Construction Loan is evidenced by the Construction Loan Agreement with Security Agreement, and the Note, with addendum.

i.	The refinanced line of credit, identified as Mortgage Loan Number 177615172, was for a line of credit in the amount of $176,500.00 (the "September LOC").  The September LOC is evidenced by the Home Equity Credit Line Agreement and Disclosure Statement, including Home Equity Confirmation Agreement, along with the Home Equity Line of Credit Supplemental Agreement for Construction Loan, including Important Terms of Our Home Equity Line of Credit.  (The September

8

Construction Loan and the September LOC may sometimes be referred to collectively as the "September Loans.")

j.    On September 14, 2007, Countrywide made an initial disbursement under the September Construction Loan for the purpose of retiring the existing debt under the June Loans, to pay for closing costs, and to provide the construction contractor with some initial funding.

k.    Countrywide continued to make disbursements to Dalton under the September Construction Loan and ultimately disbursed a total amount exceeding $1.43 million.

l.    Dalton used her own funds to pay for some costs of construction.

m.    Dalton made no further payments to Defendants, or any of them, after December 2008.

n.    Defendants accepted a short sale of the Property for a purchase price of $850,000.00.

o.    Defendants received $775,312.49 in proceeds from the short sale, resulting in a loss to Defendants in excess of $600,000.00.

p.    Defendants furnished information to credit reporting agencies concerning the September Loans.

q.    Defendants are not seeking to recover the amount of deficiency from Dalton.

## 5. PENDING MOTIONS

On May 23, 2011, Defendants filed a motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) and for summary judgment pursuant to Fed. R. Civ. P.

56 and D.C.COLO.L.CivR 56.1 (the "Pending Dispositive Motion").  The Pending

Dispositive Motion requests that judgment enter against Dalton on each of her 15 claims

for relief.

On June 10, 2011, Dalton filed her response to the Pending Dispositive Motion.

On June 27, 2011, Defendants filed their reply in support of the Pending Dispositive

Motion.  Therefore, the Pending Dispositive Motion is now ripe for disposition.

### 6.  WITNESSES

a.  *Plaintiff's nonexpert witnesses:*

i.      Witnesses who will be present at trial under Fed. R. Civ. P.

26(a)(3)(A)(i):

(1) Leanne Dalton

(2)

ii.     Witnesses who may be present at trial if the need arises

under Fed. R. Civ. P. 26(a)(3)(A)(i):

(1)

(2)

b.      *Defendants' nonexpert witnesses:*

i.      Witnesses who will be present at trial under Fed. R. Civ. P.

26(a)(3)(A)(i):

(1) Leanne Dalton.  Ms. Dalton is the Plaintiff in this action,

and has information and knowledge concerning the claims at issue.  Ms. Dalton is

expected to testify in person.

(2) John Parsons.  Mr. Parsons has information and knowledge concerning and relating to the June 2007 and September 2007 loans given to Dalton for the acquisition of, and construction of improvements on, the Property.  Mr. Parsons also has information and knowledge of the construction on the Property, its budget and progress, and the eventual short sale of the Property.  Mr. Parsons is expected to testify in person.

(3) Rhett Duncan.  Mr. Duncan has information and knowledge concerning and relating to the June 2007 and September 2007 loans given to Dalton for the acquisition of, and construction of improvements on, the Property.  Mr. Duncan also has information and knowledge of the construction on the Property, its budget and progress, and the eventual short sale of the Property.  Mr. Duncan is expected to testify in person.

ii.    Witnesses who may be present at trial if the need arises under Fed. R. Civ. P. 26(a)(3)(A)(i):

(1) Scott Greene.  Mr. Greene is a former homebuilder and is the current risk manager at Trinity Real Estate Solutions, Inc.  Mr. Greene may be called to testify about the February 10, 2009 cost estimate to complete construction of the Property that he prepared for the Defendants.  If called, Mr. Greene is expected to testify in person.

(2)  Elizabeth Sue Morris.  Ms. Morris took photographs of the Property on February 2, 2009 photographs for the February 10, 2009 cost estimate

11

to complete construction of the Property.  Ms. Morris also prepared a Broker Price Opinion for the Property on February 4, 2009.  Ms Morris may be called to testify about the Broker Price Opinion, the photographs of the Property, the status of construction's completion at the time she took the photographs, the basics of home construction, and the local housing market in Evergreen, Colorado during the time relevant to this dispute. If called, Ms. Morris is expected to testify in person.

iii.    Witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony under Fed. R. Civ. P. 26(a)(3)(A)(ii):  None.

c.    *Plaintiff's expert witnesses*:

i.    Witnesses who will be present at trial under Fed. R. Civ. P. 26(a)(3)(A)(i): None

ii.    Witnesses who may be present at trial if the need arises under Fed. R. Civ. P. 26(a)(3)(A)(i):

d.    *Defendants' expert witnesses*:

i.    Witnesses who will be present at trial under Fed. R. Civ. P. 26(a)(3)(A)(i):  None.

ii.    Witnesses who may be present at trial if the need arises under Fed. R. Civ. P. 26(a)(3)(A)(i):  None.

iii.    Witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony under Fed. R. Civ. P. 26(a)(3)(A)(ii): None.

12

## 7. EXHIBITS

a. *Plaintiff's Exhibits:*

    i.    All Exhibits listed by Defendants

    ii.    Any later discovered document or documents necessary for

rebuttal.

b.    *Defendants' Exhibits:*

| | | |
|---|---|---|
| A | | 2010-05-27 Complaint and Jury Demand DepoEx. 01 |
| B | | 2006 1099-MISC (Dalton 0374) DepoEx. 02 |
| C | | 2007 1099-MISC (Dalton 0375) DepoEx. 03 |
| D | | 2008 1099-MISC (Dalton 0376) DepoEx. 04 |
| E | | 2007-04-24 Remax Contract to Buy and Sell Real Estate (B 000142 – 153) DepoEx. 05 |
| F | | 2007-07-19 Construction Contract (B 000749 – 757) DepoEx. 06 |
| G | | 2007-06-29 Uniform Residential Loan Application, $649,999 #176028895 (B 000001 – 5) DepoEx. 07 |
| H | | 2007-06-29 Loan Application Disclosure Acknowledgements, #176028895 (B 000050 – 51) DepoEx. 08 |

| | | |
|---|---|---|
| I | | 2007-06-29 Truth In Lending Disclosure Statement, #176028895 (B 000054 – 56) DepoEx. 09 |
| J | | 2007-06-29 Settlement Statement, $649,999 #176028895 (B 000063 – 65) DepoEx. 10 |
| K | | 2007-06-29 Interest Only Fixed Rate Note, $649,999 #176028895 (B 000111 – 113) DepoEx. 11 |
| L | | 2007-06-29 Uniform Residential Loan Application, HELOC $173,651 #176028903 (B 000230 – 234) DepoEx. 12 |
| M | | 2007-06-29 Loan Application Disclosure Acknowledgements, HELOC #176028903 (B 000258 – 259) DepoEx. 13 |
| N | | 2007-06-29 Important Terms Of Our Home Equity Line Of Credit, HELOC, #176028902 (B 000261 – 266) DepoEx. 14 |
| O | | 2007-06-29 Notice Of Right To Cancel Home Equity Line of Credit, HELOC, #176028903 (B 000267 – 268) DepoEx. 15 |

| | | | |
|---|---|---|---|
| P | | | 2007-06-29 Home Equity Credit Line Agreement and Disclosure Statement, HELOC #176028903 (B 000291 – 300) DepoEx. 16 |
| Q | | | 2007-06-29 Home Equity Confirmation Agreement, HELOC #176028903 (B 000301 – 302) DepoEx. 17 |
| R | | | 2007-09-10 Dalton Letter to Farris and Paul (Dalton 0281) DepoEx. 18 |
| S | | | 2007-08-02 Countrywide Letter to Dalton Re: One-Time Close Loan, #177615156 (B 001265 – 1268) DepoEx. 19 |
| T | | | 2007-09-10 Uniform Residential Loan Application, $1,470,000 #177615156 (B 000447 – 451) DepoEx. 20 |
| U | | | 2007-09-10 Loan Application Disclosure Acknowledgements, #177615156 (B 000543-545) DepoEx. 21 |
| V | | | 2007-09-10 Affiliated Business Arrangement Disclosure Statement, #177615156 (B 000548 – 549) DepoEx. 22 |
| W | | | 2007-07-30 Good Faith Estimate, #177615156 (B 000550 – 552) DepoEx. 23 |

| X | | 2007-0910 Notice of Right to Cancel, Rescission, #177615156 (B 000556 – 557) DepoEx. 24 |
|---|---|---|
| Y | | 2007-09-10 Settlement Statement, #177615156, #177615172 (B 000575 – 577) DepoEx. 25 |
| Z | | 2007-09-10 Truth in Lending Disclosure Statement, #177615156 (B 000561 – 563) DepoEx. 26 |
| A1 | | 2007-09-10 Fixed/Adjustable Rate Note, #177615156 (B 000632 – 635) DepoEx. 27 |
| A2 | | 2007-09-10 Construction Loan Addendum to Note, #177615156 (B 000639 – 640) DepoEx. 28 |
| A3 | | 2007-09-10 Notice to Borrower Regarding One Time Close Construction Loan, #177615156 (B 000794) DepoEx. 29 |
| A4 | | 2007-09-10 Construction Loan Agreement with Security Agreement, #177615156 (B 000827 – 836) DepoEx. 30 |
| A5 | | 2007-09-10 Exhibit B, Construction Loan Budget, #177615156 (B 000855 – 856) DepoEx. 31 |

16

| | | |
|---|---|---|
| A6 | | 2007-09-10 Exhibit C, Draw Request Instructions to Closing Agent and Borrower, #177615156 (B 000837 – 840) DepoEx. 32 |
| A7 | | 2007-09-10 Exhibit D – Conditions to Subsequent Draw Requests, #177615156 (B 000853 – 854) DepoEx. 33 |
| A8 | | 2007-09-10 Uniform Residential Loan Application, Piggyback HELOC #177615172 (B 001021 – 1025) DepoEx. 34 |
| A9 | | 2007-09-10 Loan Application Disclosure Acknowledgements, #177615172 (B 001073 – 1075) DepoEx. 35 |
| A10 | | 2007-09-10 Affiliated Business Arrangement Disclosure Statement, #177615172 (B 001078 – 1079) DepoEx. 36 |
| A11 | | 2007-09-10 Important Terms of our Home Equity Line of Credit, #177615172 (B 001083 – 1090) DepoEx. 37 |
| A12 | | 2007-09-10 Notice of Right to Cancel Home Equity Line of Credit, #177615172 (B 001097) DepoEx. 38 |

| | | |
|---|---|---|
| A13 | | 2007-09-10 Addendum to Home Equity Credit Line Agreement and Disclosure Statement "No Closing Cost" Program Option, #177615172 (B 001126 – 1127) DepoEx. 39 |
| A14 | | 2007-09-10 Home Equity Credit Line Agreement and Disclosure Statement, #177615172 (B 001128 – 1137) DepoEx. 40 |
| A15 | | 2007-09-10 Home Equity Confirmation Agreement, #177615172 (B 001138 – 1139) DepoEx. 41 |
| A16 | | 2007-09-10 Home Equity Line of Credit Supplemental Agreement For Construction Loan, #177615172 (B 001175 – 1178) DepoEx. 42 |
| A17 | | 2008-11-03 Dalton Email to Duncan and Kenney Re: 34305 Ranchero Rd (B 001910) DepoEx. 43 |
| A18 | | 2009-02-01 Dalton letter to Spicer Re: 34305 Ranchero Rd (B 001691) DepoEx. 44 |
| A19 | | 2009-02-24 Dalton fax to Duncan, with attached 1st Bank Statements (B 001958 – 1965) DepoEx. 45 |

| | | |
|---|---|---|
| A20 | | 2009-03-12 Duncan email to Dalton Re: 177615156 Dalton – Ranchero Contract $850k (B 001883 – 1884) DepoEx. 46 |
| A21 | | 2009-02-04 Broker Price Opinion, #177615156 (B 001931 – 1936) DepoEx. 47 |
| A22 | | 2011-03-03 Plaintiff's Responses to Defendants' First Set of Written Discovery, DepoEx. 48 |
| A23 | | 2010-04-21 Bliss Demand Letter to Bank of America (B 000025 – 34) DepoEx. 49 |
| A24 | | 2011-04-19  Dalton Deposition Transcript |
| A25 | | 2009-02-01 Dalton Deposition Transcript |
| A26 | | 2009-03-04 Dalton Deposition Transcript |
| A27 | | 2008-05-06 Digital Draw Network Inspection #6 (B 001738 – 1743) DepoEx. 50 |
| A28 | | Activity Log |
| A29 | | Dalton Budget – Funding (B 001981 – 1982) |
| A30 | | Disbursement Analyst Activity/Comment Log (B 001982 – 2023) |

| | | |
|---|---|---|
| A31 | | Loss Mitigation, #177615156 (B 001486 – 1497) |
| A32 | | 2007-06-29 Warranty Deed (Dalton 001) |
| A33 | | 2007-09-10 Construction Loan Agreement With Security Agreement, and<br>Ex A: Legal Description, Ex B: Construction Loan Budget<br>Ex C: Draw Request Instructions to Closing Agent and Borrower, Ex D: Conditions to Subsequent Draw Requests<br>(Dalton 163 – 180) |
| A34 | | 2007-09-10 Refinance Disclosure, #177615156 (Dalton 220) |
| A35 | | 2007-09-18 TCL Cost Breakdown Detail (B 001853 – 1855) |
| A36 | | 2007-10-03 DDN Inspection #1, #177615156 (B 001824 – 1828) |
| A37 | | 2007-10-08 DDN Inspection #2, #177615156 (B 001820 – 1823) |
| A38 | | 2007-10-09 TCL Cost Breakdown Detail (B 001811 – 1815) |

| | | |
|---|---|---|
| A39 | | 2007-11-20 DDN Inspection #3, #177615156 (B 001801 – 1806) |
| A40 | | 2007-11-27 TCL Cost Breakdown Detail (B 001791 – 1795) |
| A41 | | 2008-01-18 DDN Inspection #4, #177615156 (B 001781 – 1787) |
| A42 | | 2008-01-24 TCL Cost Breakdown Detail (B 001771 – 1775) |
| A43 | | 2008-02-26 TCL Cost Breakdown Detail (B 001767 – 1769) |
| A44 | | 2008-03-12 DDN Inspection #5, #177615156 (B 001758 – 1763) |
| A45 | | 2008-03-13 TCL Cost Breakdown Detail (B 001750 – 1752) |
| A46 | | 2008-05-06 DDN Inspection #6, #177615156 (B 001738 – 1743) |
| A47 | | 2008-07-25 Dalton Email to Kenney, responding to his 2008-07-25 Email Re Draws (Dalton 423 – 424) |
| A48 | | 2008-08-19 TCL Cost Breakdown Detail (B 001726 – 1730) |

| A49 | | 2008-10-09 Dalton Email to Duncan Re: 34305 Ranchero Road (Dalton 428) |
|---|---|---|
| A50 | | 2008-10-20 Dalton Email to Kenney, responding to his 2008-10-19 Email (Dalton 434 – 435) |
| A51 | | 2008-11-03 Competitive Market Analysis (B 001709 – 1715) |
| A52 | | 2008-11-10 DDN Inspection #12, #177615156 (B 001716 – 1722) |
| A53 | | 2008-11-11 Duncan Email to Dalton and Kenney Re: Winterization Budget, responding to 2008-11-10 Kenney Email to Dalton (Dalton 437 – 439) |
| A54 | | 2009-01-22 DDN Inspection #13, #177615156 (B 001700 – 1706) |
| A55 | | 2009-02-04 Broker Price Opinion (B 001931 – 1936) |
| A56 | | 2009-02-19 Notice of Default, #177615156 (B 001692 – 1693) |
| A57 | | 2009-03-23 Countrywide Demand for Payment, #177615172 (Dalton 363 – 365) |

| A58 | | 2009-03-23 Countrywide Demand for Payment, #177615156 (Dalton 359 – 362) |
| A59 | | 2009-04-24 Settlement Statement and Buyer/Seller Certification, (Dalton 355 – 358) |
| A60 | | 2010-02-10 Cost to Complete and attached photographs (B 001967 – 1980) |

c.　　　Copies of listed exhibits must be provided to opposing counsel and

any pro se party no later than five days after the final pretrial conference.  The

objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and

served by hand delivery or facsimile no later than 11 days after the exhibits are

provided.

## 8.  DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

None.

## 10.  SETTLEMENT

Undersigned counsel for the parties certify that:

a.  J. Kevin Bridston and Sean M. Hanlon, counsel for Defendants, along

with John Parsons, an out-of-state representative for Defendants with full settlement

authority, personally attended the Settlement Conference scheduled before Magistrate

Judge Michael J. Watanabe on February 1, 2011 to discuss in good faith the settlement

of the case.

b.    Neither Plaintiff nor Plaintiff's counsel appeared at the Settlement

Conference set for February 1, 2011.  *See* Minute Order, Doc. 23.

c.    The parties were promptly informed of all offers of settlement.

d.    Counsel for the parties do not intend to hold future settlement

conferences.

e.    It appears from the discussion by all counsel that there is little

possibility of settlement.

f.    A further settlement conference with Magistrate Judge Michael J.

Watanabe has not been scheduled.

g.    Counsel for the parties considered ADR in accordance with

D.C.COLO.LCivR. 16.6.

## 11.  OFFER OF JUDGMENT

Counsel and any pro se party acknowledge familiarity with the provision of Rule

68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have

discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this

action and the trial, and may not be amended except by consent of the parties and

approval by the Court or by order of the Court to prevent manifest injustice.  The

pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the

Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order,

reference may be made to the record of the pretrial conference to the extent reported by

stenographic notes and to the pleadings.

**13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS**

       a.     This matter is set for trial to a jury,

       b.     The trial is estimated take five days,

       c.     The trial will take place in Courtroom C401, Byron G. Rogers

United States Courthouse, 1929 Stout Street, Denver, Colorado, and

       d.     A trial preparation conference pursuant to the Pretrial and Trial

Procedures of District Judge Lewis T. Babcock is set for November 4, 2011 at 9:00 a.m.

DATED this _____ day of June, 2011.

BY THE COURT:


_____
Michael J. Watanabe
United States Magistrate Judge

APPROVED:


*s/ Otto K Hilbert, II*                              *s/ Sean M. Hanlon*
Otto K. Hilbert, II                              J. Kevin Bridston
Zachary P. Mugge                              Sean M. Hanlon
Robinson Waters & O'Dorisio, P.C.    Holland & Hart LLP
1099 18th Street, Suite 2600              555 Seventeenth Street, Suite 3200
Denver, Colorado 80202                    Post Office Box 8749
Phone: (303) 297-2600                       Denver, Colorado 80201-8749
Fax: (303) 297-2750                           Phone: (303) 295-8000
*Attorneys for Plaintiff*                        Fax: (303) 295-8261
                                                          *Attorneys for Defendants*


5126138_3.DOCX