IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 10-cv-01234-LTB-MJW

LEANNE R. DALTON,

        Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC., a New York corporation;
BANK OF AMERICA, NATIONAL ASSOCIATION, a National Banking Association, f/k/a
COUNTRYWIDE BANK, FSB; and
BAC HOME LOANS SERVICING, LLP, a Texas Limited Partnership,

        Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

        This case is before me on Defendants' Motion for Judgment on the Pleadings Pursuant to

Fed. R. Civ. P. 12(c) and for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and D.C. Colo.

LCivR 56.1 [Doc # 27].  After consideration of the motion, all related pleadings, and the case

file, I grant Defendants' motion in part and deny it in part for the reasons set forth below.

## I.  Background

        This action arises out of financing Plaintiff obtained for the purchase of property in

Evergreen, Colorado and for the construction of improvements on that property.  For purposes of

Defendants' motion, the following facts are undisputed unless otherwise noted.

        On June 29, 2007, Plaintiff, a real estate broker associate, purchased real property located

at 34305 Ranchero Road, Evergreen (the "Property") that was to serve as her primary residence.

To finance the purchase, Plaintiff obtained two loans which closed on the June 29, 2007 purchase date: (1) Mortgage Loan Number 176028895 had a principal balance of $649,999; and (2) Mortgage Loan Number 176028903 was for a line of credit in the amount of $173,651.  In connection with these loans (the "June Loans"), Plaintiff executed Loan Application Disclosure Acknowledgments, a Truth in Lending Disclosure Statement, Important Terms of Our Home Equity Line of Credit, and Settlement Statements.

On July 19, 2007, Plaintiff entered into a construction contract for improvements to the Property.  To finance this construction, Plaintiff applied for additional loans that would also replace the June Loans.  On September 7, 2007, the June Loans were refinanced as a construction loan, Mortgage Loan Number 17765156 in the principal amount of $1,470,000 (the "September Construction Loan"), and a line of credit, Mortgage Loan Number 177615172 in the principal amount of $176,500 (the "September LOC").  Plaintiff was not eligible for a first draw under the September LOC until the improvements to the Property were completed.  Under the September Construction Loan, the improvements to the property were to be completed by March 10, 2009 for a price not to exceed $640,533.

In connection with the September Construction Loan and the September Line of Credit (the "September Loans"), Plaintiff again executed Loan Application Disclosure Acknowledgments, a Truth in Lending Disclosure Statement, Important Terms of Our Home Equity Line of Credit, and a Settlement Statement, as well as an Addendum to Home Equity Credit Line Agreement and Disclosure Statement.  Plaintiff claims, however, that she did not become aware that legally required disclosures in any of the loan documents were inaccurate or incomplete until more than two years after the September Loans closed.

-2-

On September 14, 2007, Defendant Countrywide Home Loans, Inc. ("Countrywide") made the first disbursement under the September Construction Loan.  To be eligible for disbursements under the September Construction Loan, Plaintiff had to certify that "the estimated cost to complete construction does not exceed the sum of the undisbursed Loan Amount plus the amount held in the Project Control Account."

By May of 2008, the percentage of the September Loans disbursed was greater than the percentage of construction completed, and disbursement of the remaining loan proceeds would not be sufficient to pay the remaining construction costs.  Around this time, after disbursing a total amount of over $1.43 million, Countrywide ceased making disbursements under the September Loans.  A vice president of Defendants admits that he could have approved further disbursements but declined to do so because, among other things, "[t]here was not work on the property that justified additional funds or loan proceeds being advanced."  Plaintiff asserts that the sole reason given to her for Defendants' refusal to make further disbursements was the fact that the Property was in a high foreclosure area.

After Defendants ceased making disbursements under the September Loans, Plaintiff used her own funds to pay some construction costs.  Plaintiff alleges that she did so because Defendants misrepresented that they would make further disbursements once certain improvements were completed.  Plaintiff did not deposit her personal funds into the Project Control Account.

Improvements on the Property were not completed by the required completion date of March 10, 2009, and Plaintiff's direct construction costs exceeded the approved amount of

$640,533.  Plaintiff did not make any payments on the September Loans after December of 2008 and did not repay the September Loans when due.

In April of 2009, Plaintiff sold the Property for $850,000 in a short sale which she claims Defendants encouraged and coerced her to do in part by threats of foreclosure.  Defendants received $775,312.49 in proceeds from the short sale, leaving an unpaid balance on the September Loans in excess of $600,000.  Defendants are not seeking to recover the amount of this deficiency but did provide information relating to the September Loans to the credit reporting agencies.  Plaintiff alleges that she was denied refinancing for the Property based on information that Defendants provided to the credit reporting agencies.

Defendants argue that they are entitled to the entry of judgment in their favor on each of Plaintiff fifteen claims based on various defenses and legal theories.  I apply federal law to Plaintiff's federal question claims and Colorado law to her state based claims.

## II.  Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).  Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center,* 543 F.3d 1211, 1217 (10th Cir. 2008) (internal quotations and citations omitted).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)

-4-

(*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).  Although plaintiffs need not

provide detailed factual allegations to survive a motion to dismiss, they must provide more than

labels and conclusions, a formulaic recitation of the elements of a cause of action, or conclusory

allegations.  *Ashcroft*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is

necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that

summary judgment shall be granted if the pleadings, depositions, answers to interrogatories,

admissions, or affidavits show that there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party

has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp.

v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, interrogatories, and admissions on file together with affidavits, if any, which it

believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S.  at 323;  *Mares v.

ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P.

56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary

judgment is proper and there is no need for a trial.  *Celotex*, 477 U.S. at 323.  The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, summary judgment should not enter if,

viewing the evidence in a light most favorable to the nonmoving party and drawing all

reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.

*Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III.  Analysis

**A.  The Statute of Limitations on Plaintiff's Claims Based on TILA and HOEPA**

Plaintiff's Ninth, Tenth, Eleventh, and Twelfth Claims for Relief allege violations of the

Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA")

while Plaintiff's Fourteenth Claim for Relief alleges violations of related Colorado statutes,

C.R.S. §§ 5-3-101, 5-3-106 & 5-3.5-103.  Defendants argue that these claims are barred by the

applicable one-year statute of limitations.  Plaintiff argues that if a one-year statute of limitations

is applicable to these claims it should be equitably tolled because she was not aware of problems

with Defendants' disclosures under TILA and HOEPA until late 2009 when she contacted

attorneys and others to investigate the matter.  Alternatively, Plaintiff argues that these claims

should be governed by a three-year statute of limitations applicable to certain rights of rescission

under TILA and HOEPA.

"'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time

has expired if they have been prevented from doing so due to inequitable circumstances."  *Heil v.*

*Wells Fargo Bank, N.A.,* 298 Fed. Appx. 703, 706 (10th Cir. 2008) (*quoting Ellis v. Gen. Motors*

*Acceptance Corp.,* 160 F.3d 703, 706 (11th Cir. 1998)).  Application of this doctrine is limited to

"rare and exceptional circumstances." *Garcia v. Shanks,* 351 F.3d 468, 473 n.2 (10th Cir. 2003) (citation omitted). *See also Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (equitable tolling is only available in habeas corpus proceedings "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control"). For example, the equitable tolling of a statute of limitations may be triggered where a plaintiff has actively pursued his judicial remedies by filing a defective pleading during the statutory period or where a plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veteran Affairs,* 498 U.S. 89, 96 (1990). The plaintiff bears the burden of proving that the limitations period should be equitably tolled. *Heil*, 298 Appx. at 707 (*citing Olson v. Fed. Mine Safety & Health Review Comm'n,* 381 F.3d 1007, 1014 (10th Cir. 2004)).

Here, Plaintiff has not alleged that Defendants prevented her from determining that there were inadequacies in their disclosures under TILA, HOEPA, and related state statutes, and Plaintiff is unable to argue that she worked diligently to make this determination when she admits that she did not read any of the loan documents in detail at the time the loans closed. In fact, there is no evidence to even show that Plaintiff attempted to gain an understanding of the terms and disclosures of the loan documents after problems first arose in mid-2008 when Defendants ceased making disbursements under the September Loans. Under these circumstances, I conclude that Plaintiff has failed to meet her burden of demonstrating the existence of rare and exceptional circumstances that would justify tolling the statute of limitations on her claims under TILA, HOEPA, and related Colorado statutes.

In the absence of equitable tolling, the one-year statute of limitations provided for in 15 U.S.C. § 1640(e) and C.R.S. § 5-5-202(5) expired well before Plaintiff commenced this action in May of 2010. *See Betancourt v. Countrywide Home Loans, Inc.,* 344 F. Supp. 2d 1253, 1257 (D. Colo. 2004) (TILA statute of limitations triggered on date promissory note was signed).  In the alternative, Plaintiff argues that I should apply the three-year statute of limitations set forth in 15 U.S.C. § 1635(f).  Section 1635, however, recognizes a right of rescission as to only certain transactions and specifically states that it does not apply to residential mortgage transactions as defined in 15 U.S.C. § 1602(w).  Section 1602(w) defines a "residential mortgage transaction" as "a  transaction in which a mortgage, deed of trust, ..., or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  Because this definition encompasses the loans Plaintiff obtained from Defendants to finance the purchase of her primary residence and improvements thereto, Section 1635 does not apply even if the remedy of rescission was otherwise available under the facts and circumstances of this case.

Accordingly, Plaintiff's Ninth, Tenth, Eleventh, Twelfth, and Fourteenth Claims for Relief are time-barred by the applicable one-year statute of limitations under TILA, HOPEA, and Colorado's Consumer Credit Code.

## B.  Plaintiff's RESPA Claim

Defendants argue that Plaintiff's Thirteenth Claim for Relief must fail because there is no private cause of action available under the applicable sections of the Real Estate Settlement Procedures Act ("RESPA").  Plaintiff acknowledges that Sections 2603 and 2604, 12 U.S.C., of RESPA do not expressly provide for a private right of action but argues that this Court should

nonetheless find that one exists notwithstanding authority to the contrary.  *See e.g. Duke v. H &*
*R Block Bank,* 2011 WL 1060656 at * 4 (D. Colo Mar. 8, 2011) (RESPA §§ 2603 & 2604
"outline the disclosures which lenders must provide borrowers, but they do not create a private
cause of action against mortgage lenders who fail to make such disclosures"); *Agbabiaka v.*
*HSBC Bank USA Nat'l Ass'n.* 2010 WL 1609974 at * 4 (N.D. Cal. Apr. 20, 2010) ("There is no
private right of action under RESPA for violations of Sections 2603 and 2604.").  This I decline
to do.

Because there is no private cause of action for violations of RESPA §§ 2603 & 2604,
Defendants are entitled to judgment as a matter of law on Plaintiff's Thirteenth Claim for Relief.

## C.  Plaintiff's Standing to Pursue a Claim Under the CCPA

The Colorado Consumer Protection Act (the "CCPA") " was enacted to regulate
commercial activities and practices which, because of their nature, may prove injurious,
offensive, or dangerous to the public."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino*
*Lining, Inc.,* 62 P.3d 142, 146 (Colo. 2003) (internal quotations and citations omitted).  To
effectuate its remedial purpose, the CCPA is to be "liberally construed."  *Dean Witter Reynolds*
*Inc. v. Variable Annuity Life Ins. Co.,* 373 F.3d 1100, 1113 (10th Cir.2004).  "To prevail on a
CCPA claim, a plaintiff must prove five elements: (1) the defendant engaged in an unfair or
deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's
business, vocation, or occupation; (3) the challenged practice significantly impacts the public as
actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff
suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the

plaintiff's injury." *Park Rise Homeowners Ass'n, Inc. v. Resource Const. Co.,* 155 P.3d 427, 434-35 (Colo. App. 2006).

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's CCPA claim because she cannot prove that they engaged in an unfair or deceptive trade practice; that any such practices significantly impacted the public; or that any such practice caused her injuries.

A person engages in a "deceptive trade practice" for purposes of the CCPA when, in the course of their business, such person, among other things knowingly makes a false representation as to the characteristics or benefits of services.  C.R.S. § 6-1-105(1)(e). Defendants assert that they did not knowingly make any false representation to Plaintiff that induced her to enter into either the June or September Loans and that any representations or warranties that were made are barred by the credit agreement statute of frauds, C.R.S. § 38-10-124(2), unless they are in writing and signed.

In response, Plaintiff cites excerpts from her deposition testimony and allegations in her Complaint relating to Defendants' alleged misrepresentations that they would make further disbursements under the September Loans once certain improvements were completed at Plaintiff's expense and that they could foreclose on the Property.  Even if these allegations were not barred by the credit agreement statute of frauds, they fail to demonstrate a knowing false representation about the nature of the June or September Loans since these representations were made long after these loans closed.

Moreover, there is no similarity between Plaintiff's allegations about what was falsely represented to her and the allegations in the other lawsuits on which Plaintiff relies to establish

the public impact element of her CCPA claim.  Specifically, Plaintiff cites a case brought by the

FTC against Defendants to remedy Defendants' alleged unlawful practices in providing default-

related services to borrowers at marked-up fees and in servicing loans of borrowers who file for

Chapter 13 bankruptcy protection and another case brought by the Attorney Generals of several

states against Defendants for unfair and deceptive practices in marketing and originating loans.

Given the different circumstances involved in these cases, Plaintiff cannot demonstrate that a

significant number of consumers are directly affected by the particular conduct of which she

complains or that similar conduct has previously impacted other consumers or has the significant

potential to so in the future.  *Rhino Linings,* 62 P.3d at 149 (identifying factors relevant to

determining whether challenged practice significantly impacts the public).

 Thus, irrespective of whether she can show that Defendant's conduct caused her injuries,

Plaintiff is unable to prove other elements of her CCPA claim, and Defendants are entitled to

judgment as a matter of law on Plaintiff's Second Claim for Relief.

## D.  Colorado Credit Agreement Statue of Frauds

 Colorado's credit agreement statute of frauds, C.R.S. § 38-10-124(2), provides that

> Notwithstanding any statutory or case law to the contrary, ..., no debtor or creditor
> may file or maintain an action or a claim relating to a credit agreement involving
> a principal amount in excess of twenty-five thousand dollars unless the credit
> agreement is in writing and is signed by the person against whom enforcement is
> sought.

 Defendants argue that the credit agreement statue of frauds bars Plaintiff's claims for

fraudulent misrepresentation, promissory estoppel, unjust enrichment, breach of fiduciary duty,

breach of the implied covenant of good faith and fair dealing, and outrageous conduct because

each of these claims is predicated on oral representations Defendants allegedly made to Plaintiff.

In response, Plaintiff concedes that there is authority generally supporting Defendants' position but argues that this authority is not controlling under the facts of this case.  Specifically, Plaintiff argues that the subject oral representations relate to draw transactions that, unlike the June and September Loans, do not fall within the definition of  "credit agreement" that is set forth in C.R. S. § 38-10-124(a).  I disagree.

Pursuant to Section 38-10-124(1)(a)(III), "[a]ny representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, ... any of the credit agreements defined in subparagraphs (I) and (II) of this subparagraph (a)" also constitute a "credit agreement" that must be in writing.  Plaintiff does not dispute that the September Loans constitute "credit agreements" within the definition of C.R. S. § 38-10-124(1)(a)(I).  Since the oral representations on which Plaintiff's claims are based were made in connection with draws or disbursements under the September Loans, these representations likewise constitute a "credit agreement" within the definition of Section 38-10-124(1)(a)(III).  Similarly, Section 380-10-124(2) applies to any claim *relating* to a credit agreement  in excess of twenty-five thousand dollars.  There is no question that Plaintiff's claims predicated on disbursements under the September Loans relate to these credit agreements.

Accordingly, to the extent that Plaintiff's claims for fraudulent misrepresentation, promissory estoppel, unjust enrichment, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and outrageous conduct are based on alleged oral representations by Defendants, they are precluded by Colorado's credit agreement statute of frauds.  Defendants, however, are not entitled to judgment as a matter of law on these claims to the extent that they are based on written representations.  *See e.g.* Complaint, ¶¶ 44a & 66.  Since Plaintiff's claim

for breach of fiduciary duty is based solely on oral representations that purportedly induced Plaintiff to expend her funds making improvements to the Property, *see* Complaint, ¶ 75, it is precluded in its entirety by the credit agreement statute of frauds, and I need not also consider whether a fiduciary relationship existed between Plaintiff and Defendants.

**E.  Plaintiff's Outrageous Conduct Claim**

To the extent that Plaintiff's claim for outrageous conduct is based on alleged oral representations by Defendants relating to the June and September Loans, I have already concluded that it is precluded by Colorado's credit agreement statute of frauds.  The basis for Plaintiff's outrageous conduct claim, however, appears to be broader that just these representations.

In her response to Defendants' motion, Plaintiff identifies that basis as "including the verbal abuse from representatives of the Defendants, the misleading information provided to her regarding the funding to be provided by the Defendants, and the threats of foreclosure and coercion of the short sale."  The only specific act of "verbal abuse" identified by Plaintiff is that "[o]n October 9, 2008, in an exceptionally hostile and rude telephone call, a representative of Countrywide yelled at [Plaintiff] that no further amounts would be disbursed under the Loans." *See* Complaint, ¶ 26.

"Outrageous conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Destefano v. Grabian,* 763 P.2d 275, 286 (Colo. 1988) (internal quotations and citations omitted).   "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a

-13-

court to determine whether reasonable persons could differ on the question." *McCarty v. Kaiser-Hill Co., L.L.C.,* 15 P.3d 1122, 1126 (Colo. App. 2000).

Plaintiff has failed to present sufficient evidence from which a jury could conclude that Defendants engaged in outrageous conduct under the applicable high standard, and Defendants are entitled to judgment as a matter of law on this claim in its entirety.

## F.  Plaintiff's Defamation Claim

Defendants argue that Plaintiff's defamation claim is preempted by Section 1681t(b)(1)(F), 15 U.S.C., of the Fair Credit Reporting Act (the "FCRA") which provides:

> No requirement or prohibition may be imposed under the laws of any State – (1) with respect to any subject matter regulated under –
> ...
>
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply to [certain specified Massachusetts and California statutory provisions].

There is case law supporting this argument.  *See e.g. Sigler v. RBC Bank (USA),* 712 F. Supp.2d 1265, 1269 (M.D. Ala. 2010).  As Plaintiff points out, however, there is a split in authority as to whether state common law claims such as defamation are preempted by Section 1681t(b)(1)(F) based on an apparent conflict between this provision and Section 1681h(e) of the FCRA which provides:

> ... no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

*See e.g. Baker v. Gen. Elec. Capital, Corp.,* – F. Supp.2d –, 2011 WL 1743610 *6 (M.D. Ga. May 6, 2011).

-14-

The Tenth Circuit has not yet addressed this issue, and there is little guidance from other appellate courts.  Federal district courts addressing this issue have taken three difference approaches: (1) the "total preemption" approach which precludes all state law claims against furnishers of credit information; (2) the "temporal approach" which determines preemption based on whether a cause of action arises before or after a furnisher of credit information has notice of a consumer dispute; and (3) the "statutory approach" which precludes only claims brought pursuant to state statutes.  *Buraye v. Equifax,* 625 F. Supp.2d 894, 898 (C.D. Cal. 2008).

In determining the correct approach, I am mindful that there is a presumption against the preemption of state law and that I should therefore narrowly construe the scope and extent of the express preemption set forth in 15 U.S.C. § 1681t(b)(1)(F).  *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 518 (1992) ("... presumption [against preemption] reinforces the appropriateness of a narrow reading of [preemptive provision]").  Further, as the parties advocating preemption, Defendants bear the burden of showing that Plaintiff's defamation claim conflicts with Section 1681t(b)(1)(F).  *Cook v. Rockwell Int'l Corp.,* 618 F.3d 1127, 1143 (10th Cir. 2010).

The temporal and statutory approaches set forth above represent less preclusive readings of Section 1681t(b)(1)(F) and reconcile the apparent conflict between Sections 1681t(b)(1)(F) & 1681h(e).  Under either of these approaches, Plaintiff's defamation claim is not precluded by the FCRA.  I therefore conclude that Defendants have failed to meet their burden of demonstrating that Plaintiff's defamation claim is preempted by Section 1681t(b)(1)(F).

Defendants also argue that Plaintiff's defamation claim must fail because she cannot prove that they acted with malice or willful intent to injure her.  In support of this argument, Defendants first note that they corrected the information regarding the number of payments

missed by Plaintiff once they received notice that this information was inaccurate.  According to Plaintiff, however, Defendants delayed in making the necessary correction, and she was damaged in the interim.  *See* Complaint ¶¶ 32 & 33.  These allegations, if proven, may be sufficient to demonstrate the necessary malice or willful intent, and Defendants are therefore not entitled to judgment on Plaintiff's defamation claim to the extent that it is based on the reporting of inaccurate information about her payment history on the September Loans.

Next, Defendants argue that the statement that Plaintiff "settled for less than the amount due" is a true statement and therefore not defamatory.  While Plaintiff concedes that this statement is "technically true," she argues that it is nonetheless defamatory because it does not reflect the that Defendants essentially forced her to default on the September Loans and to sell the Property in a short sale.  I am not persuaded by this argument, and Plaintiff has failed to cite supporting Tenth Circuit or Colorado authority.  Thus, to the extent that Plaintiff's defamation claim is based on the statement that Plaintiff settled for less than the amount due, it fails as a matter of law.

## G.  Plaintiff's Breach of Contract Claim

Plaintiff's Third Claim for Relief alleges that Defendants breached the September Loans by failing to disburse all amounts to which she was entitled.  Defendants cite extensively to the written terms of the loan documents to demonstrate that they were under no obligation to disburse more than the $1.43 million that they provided to Plaintiff.  In particular, Defendants note that Plaintiff did not meet many of the conditions precedent to further disbursements and/or defaulted on the September Loans by her (1) failure to keep the construction costs per the approved budget; (2) failure to show evidence satisfactory to Defendants that disbursement of

the remaining loan proceeds were sufficient to pay the remaining costs of construction; (3)
failure to deposit her own funds into the Project Control Account; (4) failure to complete
construction by March 10, 2009; and (5) failure to make payments on the September Loans when
due despite having funds available to do so.

      Plaintiff first argues that any failure to comply with the terms of the September Loan
documents on her part is irrelevant because these terms were modified or waived by Defendants
through their conduct in continuing to make disbursements under the September Loans despite
this non-compliance.  Once again, however, the definition of "credit agreement" in Colorado's
credit agreement statute of frauds includes "[a]ny amendment of, cancellation of, waiver of, or
substitution for any or all of the terms or provisions of any [credit agreement]."  C.R.S. § 38-10-
124(1)(a)(III).  Thus, any modification to or waiver of the terms of the September Loans must be
in  writing in order to be enforceable pursuant to C.R.S. § 38-10-124(2).

      Plaintiff next argues that there is a materially disputed fact regarding the percentage of
construction that had been completed that precludes the entry of judgment in Defendants' favor
on her breach of contract claim.  Specifically, Plaintiff asserts that there is conflicting evidence
as to the percentage of construction that had been completed at the time Defendants ceased
making disbursements under the September Loans.  The only evidence Plaintiff presents to
support this claim is her own general assertion.  In any event, even if there is a genuine factual
dispute as to the amount of construction completed, Defendants have identified other defaults
and/or failures to satisfy conditions precedent by Plaintiff that relieved them of their obligation
to make further disbursements under the September Loans.  *See e.g.* Construction Loan
Agreement, ¶ 1.1, p. 1 ("Lender shall have no obligation to disburse Loan Proceeds at any time if

[Dalton] fails to perform any or all of [her] obligations in the Loan Documents....").  Among other things, Plaintiff admits that disbursement of the remaining loan proceeds would not have been sufficient to complete to pay the remaining construction costs.  Plaintiff's breach of contract claim against Defendants therefore fails as a matter of law.

**H.  Plaintiff's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing**

"Under Colorado law, every contract contains an implied duty of good faith and fair dealing ."  *Newflower Market, Inc. v. Cook,* 229 P.3d 1058, 1064 (Colo. App. 2010) (citation omitted).  "The doctrine exists to effectuate the parties' intentions and honor their reasonable expectations."  *Id.* (citation omitted).

> [T]he duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions.  Nor does the duty of good faith and fair dealing inject substantive terms into the parties' contract.  Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement."

*Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1363 (Colo. App. 1994).

Plaintiff's claim that Defendants breached the duty of good faith and fair dealing is based on her assertion that Defendants had discretion to continue making disbursements under the September Loans notwithstanding the fact that certain conditions precedent were not met and to obtain a second opinion regarding the percentage of construction that had been completed at the Property.  Certainly, a party can always opt to continue performing under a contract despite breach or failure of conditions precedent by the other party.  Requiring the non-breaching party to do so, however, would be equivalent to making that party accept a material change in the terms of the contract which is beyond the scope of the implied duty of good faith and fair dealing.  *See CoBank, ACB v. Reorg. Farmers Coop. Ass'n,* 170 Fed. Appx. 559, 566 (10th Cir. 2006) (bank's

decision to suspend monetary advances under the explicit default terms of the contract is not the type of discretionary authority encompassed in duty of good faith and fair dealing).

In addition, there is no evidence, other than Plaintiff's general assertion that a higher percentage of construction had been completed, that a second opinion on this issue would have been different.  In any event, the percentage of the construction that had been completed was but one of the factors that relieved Defendants of their obligation to make further disbursement of the loan proceeds.

Finally, Plaintiff asserts that she "had an expectation pursuant to the Loan Agreements that additional amounts would be made available to her to fund the construction."  This expectation was not reasonable as a matter of law based on the express terms of the September Loans which, in addition to those discussed in the previous section, provided that Plaintiff was not eligible for any draws under the September LOC until the improvements to the Property were completed.

For these reasons, Plaintiff has failed to establish a triable issue on her claim for breach of the implied duty of good faith and fair dealing, and Defendants are entitled to judgment as a matter of law on this claim.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) and for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and D.C. Colo. LCivR 56.1 [Doc # 27] is GRANTED IN PART and DENIED IN PART;

2.  Judgment shall enter in favor of Defendants on Plaintiff's Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Claims for Relief which assert claims for violations of the CCPA, TILA, HEOPA, RESPA, and related Colorado statutes; breach of contract; breach of fiduciary duty; breach of the implied duty of good faith and fair dealing; and outrageous conduct;

3.  Judgment shall enter in favor of Defendants on Plaintiff's First, Fourth, and Fifth Claims for Relief which assert claims for fraudulent misrepresentation, promissory estoppel, and unjust enrichment to the extent that these claims are based on alleged oral representations by Defendants;

4.  Defendants' motion is denied with respect to Plaintiff's First, Fourth, and Fifth Claims for Relief to the extent that these claims are based on alleged written representations by Defendants;

5.  Judgment shall enter in favor of Defendants on Plaintiff's Fifteenth Claim for Relief which asserts a claim for defamation to the extent that this claim is based on Defendants' reporting that to the credit reporting agencies that Plaintiff "settled for less than the amount due;" and

6.  Defendants' motion is denied with respect to Plaintiff's Fifteenth Claim for Relief to the extent that this claim is based on Defendants' alleged reporting of inaccurate information to the credit reporting agencies regarding Plaintiff's payment history on the September Loans.

Dated: December __1__, 2011 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE